Harry J. Schifferli v. Commissioner.
Schifferli v. Commissioner
Docket No. 24071.
United States Tax Court
1949 Tax Ct. Memo LEXIS 25; 8 T.C.M. (CCH) 1040; T.C.M. (RIA) 49280; November 30, 1949
*25 John Lewis Kelly, Esq., and Frank J. Maguire, Esq., 1300 Genesee Bldg., Buffalo, N. Y., for the petitioner. Robert C. Whitley, Esq., for the respondent. OPPER
Memorandum Sur Order OPPER, Judge: Respondent has moved to dismiss the present proceeding for lack of jurisdiction. The Tax Court's records show that the petition was filed on July 7, 1949, which is concededly the 91st day after the mailing of the notice of deficiency. Petitioner resists the granting of respondent's application on grounds which we construe as presenting only questions of fact based upon a record made at a hearing held at petitioner's request. The petition in question was originally deposited in the mail in the post office at Dunkirk, New York. The wrapper which is included in the Tax Court file shows a postmark "Dunkirk, N. Y. July 5, 7:30 P.M." The petition, also in the Tax Court file, bears the stamp "Filed July 7, 1949." This, of course, is consistent with a filing at the earliest hour of the Tax Court day on July 7. The question of fact as presented by petitioner is what occurred between those two points of time. It may be regarded as somewhat curious that a postmark showing the time *26 of 7:30 P.M. should be placed on mail emanating from a post office which concededly closes at about 7:10 P.M. and from which it is stated that the airmail pouch on July 5th left at 7:25 P.M. Be that as it may, however, for this piece of mail to have arrived in time for filing during business hours, that is, before 5:15 P.M., [1] on July 6th, the following processes were required to be performed in the 22-hour interval: The airmail pouch delivered to a mail truck; transported by mail truck to New York Central Railroad Station; loaded aboard New York Central eastbound train; transported by train - a trip of approximately one hour - to Buffalo; loaded on another truck and carried to the airmail field at Buffalo, a trip of approximately 25 minutes; flown from Buffalo to Washington by American Airlines, a trip consuming on the early morning of July 6th approximately 5 hours; transported by truck from the National Airport at Washington to the Washington City Post Office on a scheduled run consuming approximately 25 minutes; sorted, handled, and dispatched from the Washington City Post Office to Benjamin Franklin Station, a procedure for which no definite time is specified in the evidence; *27 and finally received, handled, and sorted in the Benjamin Franklin Station for which also no time is specified. The most that the evidence submitted by petitioner tends to show is that in the ordinary course of mails, assuming that each of the necessary procedures were promptly carried out, the package in question could have been dispatched from the Washington City Post Office at 11 A.M., Daylight Saving Time, to the Benjamin Franklin Station; and that there is no evidence of any occurrence in the period in question which would account for any delay in delivery. It seems to us this is no more *28 than was shown in Poynor v. Commissioner (C.C.A., 5th Cir.), 81 Fed. (2d) 521, where the fact that a petition was mailed in time for its delivery within 90 days in the ordinary course of mails was held insufficient to confer jurisdiction in the face of the fact that the petition was actually received beyond the statutory time limit. True, the evidence in that case indicated that there was a reason for the delay, which was attributable to adverse weather conditions. But the Court pointed out that: "* * * the lawmakers had in mind reasonably to be expected delays in the transmission of papers by mail or other methods of conveyances. It seems that the petitioners made no allowance for a failure of mail to move strictly according to schedule. A paper is filed when it is delivered to the proper official and by him received to be kept on file. Depositing a paper in the post office in time for it to reach the Board of Tax Appeals in the usual course of mail within the time allowed is not a filing of the paper with the Board. * * * The Board is without power to dispense on equitable grounds with the requirement of filing within the time allowed. * * *" (Italics supplied.) *29 Here there is no evidence of adverse weather conditions or any other specific interference with the speedy schedule which the evidence shows might have been sufficient to enable this piece of mail to arrive in time. But a slight delay in any of the numerous procedures through which the package was required to pass would have been sufficient to throw the entire process off schedule. And the evidence does not convince us that some failure in the complicated routine did not take place. The distance to be traveled and the short time available to petitioner were such that only by the most consistently fortunate absence of delay at any point could it be hoped that the petition would arrive at its destination in time. We think within the principle of the Poyner case, supra, the possibility of delay was a hazard of which petitioner assumed the risk. Even the employee of the post office who secured the Tax Court mail was thereby made an agent of the Tax Court - a point we need not decide - petitioner's situation is not improved. As we have already noted, there is no satisfactory evidence that this petition was received at the Benjamin Franklin Station within business hours on the 90th day. *30 And without this there was no way by which an employee of the Post Office could have made a timely delivery. In this respect the case is distinguishable from McCord v. Commissioner (C.A.D.C.), 123 Fed. (2d) 164, where the evidence showed that the petition in question was received in the telegraph office during business hours and that failure of the telegraph office to make timely delivery was due to the act of the Board of Tax Appeals itself. Here, as we have already said, there is no evidence that this particular piece of mail was received in Washington at any time prior to the close of business on the 90th day. The inapplicability of the McCord case appears by comparison with Edward Barron Estate Co. v. Commissioner (C.C.A., 9th Cir.), 93 Fed. (2d) 751, where a telegraphic petition arrived in Washington after business hours and even though actually delivered on the 90th day was held not to be timely. We conclude that respondent's motion must be granted and that the preponderance of the evidence shows that the petition was not filed until after the statutory period, thereby preventing the jurisdiction of the Tax Court from attaching. The possible harshness *31 of this result seems to us to be mitigated by two circumstances. In the first place, the assumption that from a point as distant as northern New York the delivery of a piece of mail in Washington can be safely counted on in some 22 hours is too hazardous to be relied on in the ordinary course of business practice, and those whose hopes are disappointed should not feel too hardly used. And second, the mere failure to resort to the Tax Court does not eliminate other methods by which the petitioner may seek relief. Poynor v. Commissioner, supra.
An order will be entered dismissing the petition for want of jurisdiction. Footnotes
1. RULES OF PRACTICE BEFORE THE TAX COURT OF THE UNITED STATES. "RULE 1. - BUSINESS HOURS - TIME "The office of the Clerk of the Court at Washington, D.C., shall be open during business hours on all days, except Saturdays, Sundays, and legal holidays, for the purpose of receiving petitions, pleadings, motions, and the like. Business hours' are from 8:45 o'clock a.m., to 5:15 o'clock p.m. "Time, as provided in this and other rules and in orders and notices of the Court, means standard time in the city mentioned except when advanced time is substituted therefor by law. (See Rule 61)."↩